Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Wednesday, May 09, 2007 11:43:53 AM

# THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES EDWARD NIXON, and | ) | Case No. 06-634 |
| JODI L. NIXON | ) | |
| | ) | Chapter 13 |
| Debtors. | ) | |
| ──────────────────────── | ) | |
| | ) | |
| JAMES EDWARD NIXON, and | ) | |
| JODI L. NIXON | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 06-219 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| ──────────────────────── | ) | |

## MEMORANDUM OPINION

James and Jodi Nixon (the "Debtors") filed this adversary complaint against the United States of America to obtain a determination of dischargeability with respect to a $4,656.71 income tax obligation. The Internal Revenue Service ("IRS"), on behalf of the United States of America, does not dispute that the $4,656.71 tax obligation is subject to discharge,[1] but the IRS requests that the complaint be dismissed on the pleadings on the grounds that it is not ripe for adjudication until such time as the Debtors receive their

---

[1] The IRS stated in its Motion: "If [the Debtors] receive a discharge after completion of their plan, their tax debts will be covered by the discharge, without further issue, question or litigation." (Document No. 20).

discharge – if they receive one at all – which will not occur until the end of their Chapter 13 case.

The court held a telephonic hearing on the IRS's motion on March 29, 2007, in Wheeling, West Virginia, at which time the court took the matter under advisement. For the reasons stated herein, the court will grant the motion.

## I. STANDARD OF REVIEW

A motion for a judgment on the pleadings is brought pursuant to Fed. R. Civ. P. 12(c), as made applicable to bankruptcy proceedings by Fed. R. Bankr. P. 7012(b). The standard of review to be followed by the court in adjudicating a Rule 12(c) motion to dismiss is identical to that used to adjudicate a motion for failure to state a claim under Rule 12(b)(6). *E.g.*, Fed. R. Civ. P. 12(h)(2) (providing that the defense of failure to state a claim on which relief may be granted as set forth in Rule 12(b)(6) may be raised "by motion for judgment on the pleadings . . . ."); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (stating that the court employs the same standards in adjudicating both a Rule 12(b)(6) and a Rule 12(c) motion). In short, taking the nonmoving party's allegations as true, dismissal is inappropriate unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## II. BACKGROUND

On July 26, 2006, the Debtors filed their Chapter 13 bankruptcy petition. On Schedule E, the Debtors listed the IRS as an unsecured priority creditor with respect to an unpaid $4,656.71 income tax obligation arising out of the 2002 tax year. The Debtors allege that "these income taxes were for tax years more than 3 years before the filing of the Plaintiffs'/Debtors' bankruptcy case and the Plaintiffs/Debtors are informed and believe that the taxes for such years were assessed more than 240 days before the filing of their bankruptcy case . . . ." (Compl. ¶ 4). The Debtors have proposed a 60-month Chapter 13 plan that will pay less than 100% of the claims against the bankruptcy estate. The Chapter 13 plan proposed by the Debtors treats the 2002 IRS income tax obligation as a general unsecured claim. The IRS also filed a proof of claim on August 11, 2006, listing the debt as an unsecured, nonpriority claim. As of the date of this opinion, the Debtors' plan has not been confirmed by the court.

## III. DISCUSSION

The IRS contends that the Debtors' adversary complaint to determine the dischargeability of the

-2-

Debtors' 2002 tax year liability is not yet ripe for adjudication on the basis that the Debtors have proposed a 60 month plan, which the Debtors may fail to complete. If the Debtors do complete their proposed plan, as confirmed, and obtain a discharge after the completion of their proposed plan, then the IRS agrees that the 2002 tax-year obligation owed to them is subject to that discharge. Accordingly, the only dispute in this case concerns when that determination of dischargeability can be made by the court.

The Debtors contend that their right to obtain a declaration on what debts are subject to their anticipated discharge should be ascertained as soon as possible. Whether or not a particular debt is discharged, the Debtors argue, effects how claims are classified under their proposed Chapter 13 plan, and not knowing the answer in advance adversely affects the purpose of their bankruptcy filing, which is to obtain a financial fresh start with a clear field for future effort that is unhampered by pre-existing debt.

Section 507(a)(8) of the Bankruptcy Code grants a priority claim status to the allowed unsecured claims of governmental units, to the extent that the allowed claim is for a tax measured by income for which a return is last due in the three-year period preceding the date of the petition. 11 U.S.C. § 507(a)(8)(A)(i). Section 507(a)(8) works in tandem with § 523(a)(1). Pursuant to § 523(a)(1)(A), the taxes specified in § 507(a)(8) are not subject to the Chapter 13 hardship discharge of § 1328(b), but the taxes are subject to the ordinary Chapter 13 discharge. § 1328(a)(2). Those taxes specified in § 523(a)(1)(B), however, which covers those tax debts with respect to which either no return was filed, or with respect to which a late return was filed within the two years preceding the petition date, are not subject to the ordinary Chapter 13 discharge as provided by § 1328(a)(2).

Thus, what the Debtors are seeking in their adversary complaint is a court order stating that their year 2002 income tax obligation is not a debt classified by § 523(a)(1), and, therefore, is not excepted from the Debtors' anticipated Chapter 13 discharge. Importantly, as recognized by the IRS, all the factual predicates necessary for making the determination of dischargeability occurred before the Debtors ever filed their bankruptcy petition – the only missing piece of the dischargeability determination is that the Debtors must first confirm their proposed plan and then complete all payments under that plan to obtain their discharge before any court order on the issue can be effective. 11 U.S.C. § 1328(a) ("[A]fter completion by the debtor of all payments under the plan . . . the court shall grant a debtor a discharge . . . .").

−3−

The road to a Chapter 13 discharge is not an easy one. This is due, in large part, to the length of time between the filing a Chapter 13 bankruptcy petition and completion of the Chapter 13 plan. For instance, after filing a Chapter 13 bankruptcy petition, some cases are converted to another chapter, some are dismissed voluntarily by the debtor, some are dismissed for failing to meet an administrative requirement, some are dismissed for failing to file a confirmable plan, and many others are dismissed after confirmation because, given the changeable nature of human affairs, a plan that once appeared to be feasible based on a debtor's then-existing state of financial affairs may no longer be achievable. *See, e.g.*, Scott F. Norberg, *Chapter 13 Project: Little Paid to Unsecureds*, A.B.I. J. vol. 25, No. 2, p. 1, 54-55 (March 2007) (reporting that the average discharge rate across seven sample judicial districts was 33.8% of all cases initially filed under Chapter 13). The Debtors' case arises against this backdrop – their proposed Chapter 13 plan has yet to be confirmed and assuming that the Debtors' plan is to run from the date of the first plan payment, they do not anticipate receiving their discharge until August 2011.

Several Circuit Courts have addressed the issue of whether or not an adversary complaint to determine the dischargeabiltiy of a debt is ripe for decision before the entry of a Chapter 13 discharge. Reviewing an action for a determination of whether or not a criminal restitution debt was subject to discharge, the Court of Appeals for the Ninth Circuit in the case of *Superior Court v. Heincy (In re Heincy)*, 858 F.2d 548, 550 (9th Cir. 1988), reasoned that such a determination could not be made until such time as the debtors had successfully completed their plan payments because the entry of a discharge was a contingent event – the happening of which is a necessary precondition to the effectiveness of any court order issued on the matter. The Court of Appeals for the Third Circuit has followed the lead of *Heincy*, with respect to the discharageability of criminal restitution debts. *Pa. Dep't of Pub. Welfare v. Johnson-Allen (In re Johnson-Allen)*, 871 F.2d 421, 423 (3rd Cir. 1989).

In contrast, the Court of Appeals for the Fourth Circuit in *Ekenasi v. Educ. Res. Inst. (In re Ekenasi)*, 325 F.3d 541, 547 (4th Cir. 2003), determined, within the context of a complaint to determine the dischargeability of a student loan, that the controversy was sufficiently ripe for the court to enter a final order resolving the issue before the entry of the debtor's discharge. The Fourth Circuit reasoned that no bankruptcy statute or rule prohibited an advance determination, but it noted that the specific elements that a debtor is required to prove before discharging a student loan debt favors the initiation of an adversary

– 4 –

proceeding that is brought closer in time to the anticipated date of discharge. *Id.* When confronting an identical issue, the Court of Appeals for the Eighth Circuit, while acknowledging that an adversary complaint to determine the dischargeability of student loans could occur before the entry of discharge, determined that the adversary complaint before the court was not ripe when it was commenced 3½ years before the anticipated discharge date. *Bender v. Educational Credit Management Corp. (In re Bender)*, 368 F.3d 846 (8th Cir. 2004).

Whether or not an adversary complaint is ripe for adjudication is made on a case-by-case basis. Generally, a case is non-justiciable when the "facts have [not] developed sufficiently to permit an intelligent and useful decision to be made." *Black's Law Dictionary* 1353 (8th ed. rev. 2004); *see also* 15 *Moore's Federal Practice – Civil*, § 101.70[2] (2007) ("The ripeness doctrine concerns the timing of the suit. It asks whether the case has been brought at a point so early that it is not yet clear whether a real dispute to be resolved exists between the parties."). The requirement that a case be "ripe" for adjudication is, in part, a Constitutional one, arising under the "case or controversy" requirement in Article III, Section 2, of the United States Constitution. For example, federal courts are prohibited from issuing advisory opinions, decisions based on hypothetical facts, or from addressing abstract issues lacking a concrete basis. *E.g.*, *Flast v. Cohen*, 392 U.S. 83, 96 (1968) ("[T]he implicit policies embodied in Article III, and not history alone, impose the rule against advisory opinions on federal courts."). In any case brought before a court, a determination must be made of "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1983) (stating that the "ripeness" threshold imposed by the "case of controversy" requirement generally requires that the moving party demonstrate: a personal stake in the outcome of the lawsuit; a concrete factual predicate that allows for a reasoned adjudication; and a legal controversy which sharpens the presentation of issues, i.e., the moving party "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.' ").

A determination of whether a case is "ripe" for review is a dual inquiry: the court must weigh both

the "fitness of the issues for judicial decision," and "the hardship to the parties of withholding court consideration." *Abbot Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967). Whether a case or controversy is "fit" for review, or whether it is one that remains merely hypothetical, depends on whether further factual development of the issue before the court is needed. *E.g.*, *McInnis-Misenor v. Me. Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003) (stating that the "fitness" inquiry concerns subsidiary queries into issues of "finality, definiteness . . . . '[t]he critical question . . . is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all.' ") (citation omitted). The "hardship" inquiry "evaluates 'the extent to which withholding judgment will impose hardship – an inquiry that typically turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties.' " *Id.* (citation omitted).

For example, not all factual predicates must be satisfied before judicial review may be granted if the hardship to the parties is great. *See, e.g.*, *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985) ("The issue presented in this case is purely legal, and will not be clarified by further factual development. . . . 'One does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'") (citation omitted); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (holding that a case is ripe for decision even though all the factual predicates ordinarily necessary for review have not been met when the question presented was predominantly legal and withholding a decision would work a substantial hardship on the parties seeking the declaratory judgment); *Satellite Broad. & Communs. Ass'n v. FCC*, 275 F.3d 337, 369 (4th Cir. 2001) (holding that a case is ripe for review when it raises purely legal questions).

On the other hand, even though the issues involved may be purely legal, and even though a litigant may endure hardship if a particular course of events comes to pass, some factual predicates are too contingent and therefore must be fulfilled before implicating judicial review. *See, e.g.*, *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298-99 (1979) ("When the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.' . . . When plaintiffs 'do not claim that they have

-6-

ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court.' ") (citations omitted); *Toca Producers v. FERC*, 411 F.3d 262, 266 (D.C. Cir. 2005) (determining not to review the case when there were separate administrative proceedings through which the petitioners could obtain relief); *McInnis-Misenor*, 319 F.3d at 72 (holding that a future pregnancy was a contingent condition precedent for the petitioner's lawsuit against a hospital – because she was not pregnant, the issue was not "fit" for review – and if she did become pregnant, effective relief could be had in the district court; thus, the hardship was not great).

At least four cases have directly addressed the ripeness of a pre-discharge adversary complaint to determine the dischargeability of income tax obligations under §§ 507(a)(8) and 523(a)(1) – all of which have concluded that the issue is ripe for review. *See United States v. Clavelle*, No. 93-2059, 1994 U.S. Dist. LEXIS 18203 (W.D. La. Dec. 8, 1994); *Malin v. Internal Revenue Service (In re Malin)*, 356 B.R. 535 (Bankr. D. Kan. 2006); *Swanson v. Internal Revenue Service (In re Swanson)*, 343 B.R. 678 (D. Kan. 2006); *Craine v. United States (In re Craine)*, 206 B.R. 598 (Bankr. M.D. Fla. 1997); *see also* 9 *Collier on Bankruptcy* ¶ 4007.03 (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006) ("In a chapter 13 case, [dischargeability proceedings under § 523(a)(1)] need not await the completion of a plan or a motion for a hardship discharge.").

First, the courts have reasoned that Fed. R. Bankr. P. 4007(b), which governs the time for commencing a dischargeability proceeding under § 523(a)(1), specifically states that such an adversary complaint "may be filed at any time." *E.g.*, *Clavelle*, 1994 U.S. Dist. LEXIS 18203 at *2-3 (finding the language of Rule 4007(b), and Rule 7001, which permits a declaratory judgment to be filed to determine the dischargeability of a debt, were "clear" and "plain," and specifically allowed the adversary proceeding to be filed before entry of discharge). Second, § 1322(a)(2) of the Bankruptcy Code requires that all priority claims be paid in full during the life of the Chapter 13 plan, unless the holder of the claim agrees to a different treatment. 11 U.S.C. § 1322(a)(2). Therefore, it is important to know as early as possible if a debtor's income tax obligation falls within the classification of a § 507(a)(8) priority claim so that the debtor can make the appropriate provisions for payment in the debtor's Chapter 13 plan. *E.g.*, *Malin*, 356 B.R. at 539 ("[E]arly resolution of the dischargeability question would allow debtors to modify their

– 7 –

plan to propose paying the claim and avoid paying additional interest and penalties.").

Third, determining the dischargeability of the tax claim, and by extension, its priority classification, impacts the amount of funds available for distribution to other creditors of a debtor's bankruptcy estate, i.e., general unsecured creditors will receive a greater distribution should the debtor's plan treat the IRS claim as a general unsecured debt, paid pro rata, than as a priority claim, to be paid in full before any distributions are made to unsecured creditors. *E.g.*, *Craine*, 206 B.R. at 601 ("[R]esolution of the action would impact the amount of the funds available for distribution and the extent to which the claim may be discharged on completion of the plan . . . .") (discussing *Border v. Internal Revenue Service*, 116 B.R. 588 (Bankr. S.D. Ohio 1990)). Fourth, all the factual predicates necessary for a determination of whether the tax claim would be subject to discharge have already occurred, which is an "indicator of the fitness of the issue for judicial consideration." *Milan*, 356 B.R. at 539 (stating that the exceptions to discharge under § 523(a)(1) and 507(a)(8) are either dischargeable or not, based on statutory time limitations, and a debtor's future ability to pay is not at issue).

Fifth, in looking at the hardships to the parties, no hardship results to the United States by having an advance determination of whether a tax debt is subject to discharge. By contrast, if a debtor is forced to wait until the end of the plan, which could be as long as five years from the date of plan confirmation, and if the debtor failed to anticipate correctly the outcome of the litigation, then the debtor will experience hardship because the United States's claim will continue to accrue interest and penalties. *E.g.*, *id.* ("[D]elay would work a hardship on the debtors as well as the other creditors in the case who would benefit for a determination that the Government's debt is discharged."); *Swanson*, 343 B.R. at 683 (reasoning that an advance determination of dischargeability of income tax debts simply lets the debtor know ahead of time how the discharge will affect that debt); *but see Bender*, 368 F.3d at 848 (regarding the interim accrual of interest to be a negligible hardship in conducting a ripeness analysis).

Indeed, the view of the IRS in the above-cited cases concerning the ripeness of the issue for review seems too narrow, and it focuses solely on whether or not a debtor may eventually obtain a discharge. While it is true that the effect of any order declaring a debtor's obligation to the IRS to be dischargeable will become moot should a debtor's case later be dismissed for any number of reasons, focusing solely on that fact ignores the rights and obligations of the debtors, and the real impact (in terms of the allocation of

-8-

dollars distributed) to those that are entitled to payment in during the life of a Chapter 13 plan. The filing of a Chapter 13 bankruptcy case is not analogous to the filing of a civil complaint in district court where the issues are plainly set forth in a single document. A Chapter 13 bankruptcy petition is not aimed at adjudicating singular issues; rather, the aim of the Chapter 13 bankruptcy process is to reorganize the financial affairs of a debtor and consummate a plan for the payment of creditors – the ultimate goal of which is to obtain a discharge of the debtor's pre-petition debts. Consequently, numerous rights and obligations can be altered before the entry of discharge. On dismissal of a Chapter 13 case, those alterations can be voided. Section 349 of the Bankruptcy Code specifically provides for reinstatement of avoided transfers, the vacation of entered orders, and the re-vesting of property in the event that a case is subsequently dismissed. 11 U.S.C. § 349(b).

This case, however, is distinguishable on the basis that no dispute exists between the Debtors and the IRS that the Debtors 2002 income tax liability will be discharged should the Debtors complete their Chapter 13 plan. Accordingly, the outcome of the Debtors' adversary proceeding will not have any adverse impact, in terms of advance payment of secured or priority claims, to the unsecured creditors of the Debtors' estate. Likewise, because no dispute exists concerning the dischargeability of the Debtors' taxes, the Debtors do not have a need to alter the IRS's rights in the Debtors' proposed Chapter 13 plan, or pursuant to any post-petition modification.

Regarding the four above-cited cases and the five above-stated reasons why an adversary complaint to determine the dischargeability of an income tax debt is ripe for review before the entry of discharge, this court concurs in their reasoning as far as the fitness of the dischargeability issue for review is concerned,[2] but this court finds no hardship to the Debtors by withholding review because the IRS has conceded its unsecured, non-priority, dischargeable status. In short, the Debtors' complaint to determine dischargeability does not create a direct and immediate delimina for the parties, and no impending injury exists. Furthermore, because the IRS's concession that the Debtors 2002 income tax debt is subject to

---

[2] No further factual development is necessary to make the determination of whether or not the Debtors 2002 income tax obligation would be subject to their discharge should they eventually receive one.

– 9 –

their eventual discharge is essential to the court's ruling on the IRS's motion, the IRS will likely be barred from attempting to litigate the issue in the future. *See generally* 18 *Moore's Federal Practice – Civil* § 132.01[1] (2007) ("Under the doctrine of issue preclusion, or collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party (or privy) to the prior litigation. Issue preclusion therefore applies to prevent, or estop, relitigation of the same issues in a subsequent case.").

Consequently, in the end, the granting of the IRS's motion to dismiss is a pyrrhic victory. In the past, when there has been no dispute concerning the outcome of the tax dischargeability litigation, as in this case, this District has entered agreed orders providing for non-dischargeability in the event of a hardship discharge under 11 U.S.C. § 1328(b), and for discharge of the income tax liability in the event that a debtor completes the plan and receives a discharge under § 1328(a). This practice has always worked well, and the court is at a loss to understand the IRS's refusal to engage in that practice in this case.

### IV. CONCLUSION

The court will grant the IRS's motion for a judgment on the pleadings and dismiss the Debtors' adversary complaint. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.